FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

99 SEP 27 AM 10: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

JUANITA FRIESON;                  )
GLORIA SNYDER; and                )
LORETTA BLOCKER,                  )
                                  )
          Plaintiffs,             )
                                  )
v.                                )        CV 97-P-3365-W
                                  )
JIM WALTER RESOURCES, INC.,       )        ENTERED
and RALPH WILLIAMS,               )
                                  )        SEP 27 1999
          Defendants.             )

## Opinion

Before the Court is a Motion for Summary Judgment filed by Defendant Jim Walter Resources, Inc. on March 29, 1999. For the reasons expressed below, the Motion for Summary Judgment is due to be granted in full as against all three plaintiffs.

## Facts

Jim Walter Resources ("JWR") markets industrial-use coal and operates four underground mines in Tuscaloosa and Jefferson Counties. In 1991, JWR promulgated an anti-harassment policy and complaint procedure for its employees. Pursuant to this policy, mine employees are to direct complaints of alleged harassment to the Industrial Relations Supervisor or the Mine Manager. When this policy was implemented, JWR trained its salaried employees on the policy, gave them a copy of the policy, and distributed the policy to rank-and-file miners along with their paychecks. The anti-harassment policy was posted on a bulletin board at the bath house where job bid notices are posted and also near the mine manager's office.[1]

Plaintiffs Juanita Frieson, Gloria Snyder, and Loretta Blocker are all black females who in 1980 began work as inside laborers in a mining operation run by Defendant. In September of 1996, Defendant Ralph Williams, the section foreman at JWR's No. 7 Mine, became the immediate supervisor for all three women. Plaintiffs allege that soon after Williams became their supervisor, he began a cycle of offensive and harassing conduct toward the women. This conduct included, among

---

[1] All three plaintiffs claim that they never received a copy of the policy or saw the policy posted on any bulletin board prior to March of 1997. In addition, in response to JWR's Motion for Summary Judgment, all three plaintiffs testified by affidavit that there were no copies of the policy posted in the mine itself.

1

other things, name calling, sexual propositions, and offensive touching. When this conduct persisted, Plaintiff Frieson complained to Dwight Cagle, a union representative, about general "harassment" by Williams, but never specifically mentioned sexual harassment. While Cagle did not report Frieson's complaint to JWR, he did speak with Williams about the conduct and followed up with Frieson a few days later, who indicated that all was well. Frieson also complained about Williams to Jerry McKinney, the General Mine Foreman. In complaining to McKinney, Frieson spoke generally about work related issues and did not mention that Harris was sexually harassing her. While she did tell McKinney that Williams was "pushing on" her, Frieson's complaints focused on the way that Williams supervised her work, and she did not mention that the "pushing" involved physical contact of a sexual nature. McKinney relayed Frieson's complaints to Larry Bentley, Williams' immediate supervisor, advising Bentley that Frieson had complained about Williams screaming at her about her work performance. Bentley subsequently met with Williams and counseled him on how to speak with employees about work performance. Frieson later made an equally vague complaint to Bentley himself that he needed to talk to Williams because she could not get along with him.

Other than the aforementioned complaints from Frieson, JWR was never made aware of any complaints that the Plaintiffs had with respect to Ralph Williams until March 13, 1997, when a co-worker of the Plaintiffs' named Jan Tyner reported Williams to JWR management for sexual harassment. To substantiate her allegations, Tyner named Frieson, Snyder, and Blocker as witnesses to the alleged harassment. In the course of investigating Tyner's complaints, the Plaintiffs were interviewed, and the alleged harassment was revealed. Immediately after learning of the allegations, Richard Donnelly, the Mine Manager, Roger Armbrester, the Manager of Personnel and Benefits, and William Beemer, the Industrial Relations Supervisor, met with Williams and advised him of the allegations. Williams denied sexually harassing the employees, but said that he was familiar with JWR's sexual harassment policy and that he felt that the policy would be violated by the alleged conduct. Donnelly instructed Williams to refrain from any contact with female employees and informed him that he would be suspended pending investigation of the complaints. Williams then advised Donnelly that he had planned to start a vacation the next day, which Donnelly allowed in lieu of the suspension. During Williams' absence from the mine site, JWR interviewed various witnesses, including all three plaintiffs in this case. On March 24, 1997, Williams returned to work and was assigned to a section of the mine where no female employees worked. The next day, Williams was suspended. On March 28, 1997, after obtaining signed affidavits from witnesses and the alleged victims, Williams was fired.

On December 31, 1997, Plaintiffs Juanita Frieson, Gloria Snyder, and Loretta Blocker commenced this action against JWR and Ralph Williams[2] pursuant to Title VII of the Civil Rights Act of 1964 and various state law claims. Plaintiffs' Second Amended Complaint filed on November 19, 1998 alleges that JWR subjected them to a sexually hostile work environment (Count I); that JWR retaliated against them (Count II); that JWR discriminated against plaintiff Blocker because of her

[2]Plaintiffs brought claims against Ralph Williams for assault and battery and invasion of privacy. On April 7, 1999, Defendant Ralph Williams filed a motion for summary judgment which is not the subject of this opinion.

race (Count III); that JWR negligently retained and supervised defendant Ralph Williams (Count IV); and that JWR exhibited bad faith in its denial of Plaintiff Blocker's workers' compensation claim (Counts VII and VIII). On March 29, 1999, Defendant Jim Walter Resources moved for summary judgment on each of Plaintiffs' claims.

## Claims

### 1.    Sexual Harassment[3]

In Count I of their Second Amended Complaint, Plaintiffs allege that JWR subjected them to a hostile work environment through the actions of Ralph Williams. An employer may be found vicariously liable to a victimized employee based upon a hostile environment created by a supervisor with immediate or higher authority over the employee. *Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 2270 (1998). However, in instances where no tangible employment action[4] has been taken against the employee, an employer may raise an affirmative defense to liability. *Id.* In order to successfully assert this defense, the defending employer must show that it has exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* In the present case, Plaintiffs' hostile environment claims fail because the conduct of both JWR and the Plaintiffs entitle JWR to assert an affirmative defense to liability.

Plaintiffs have alleged no conduct on the part of Ralph Williams or JWR that would amount to a tangible employment action. While Plaintiffs allege that they were required to perform additional work and/or were subjected to more strenuous time requirements in completing assigned duties, there have been no allegations such as discharge, demotion, or undesirable reassignment which might culminate Williams' harassment into tangible employment action. *See id.* Therefore, JWR is afforded the affirmative defense if it can show that it exercised reasonable care to prevent and correct promptly sexual harassment and that the Plaintiffs unreasonably failed to utilize or take advantage of preventive and corrective opportunities. *See id.*

---

[3] JWR argues that the hostile environment claims of both Snyder and Blocker are time barred because they did not file an EEOC charge within 180 days of the last alleged discriminatory act. According to the deposition and interrogatory testimony of these two plaintiffs, Defendants' argument appears to be warranted. However, since JWR filed its summary judgment motion raising the timing issue, Plaintiffs Blocker and Snyder have filed affidavits alleging that Williams' harassment continued longer than they had originally testified. JWR has since filed a motion to strike the portions of Plaintiffs' affidavits which contradict their prior sworn deposition and interrogatory testimony. Because Plaintiffs' claims are due to be dismissed on the merits notwithstanding these contradictions, it is unnecessary for this Court to rule on the motion.

[4] "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 118 S. Ct. at 2268.

Through its promulgation and distribution of its anti-harassment policy and complaint procedure in 1991, JWR exercised reasonable care to prevent sexually harassing behavior. Plaintiffs' assertion that JWR cannot utilize the affirmative defense of "reasonable preventive measures" because neither Ralph Williams nor the Plaintiffs themselves were ever trained with respect to JWR's anti-harassment policy is incorrect. While it is true that Williams never attended training sessions provided by JWR for salaried employees, that fact is not fatal to JWR's assertion of the *Faragher-Ellerth* affirmative defense. The *Faragher-Ellerth* decisions simply impose a duty on employers to use "reasonable" measures to prevent harm. There is no requirement that employers provide anti-harassment training to satisfy the reasonableness standard.

JWR has also shown that it exercised reasonable care to promptly correct the alleged sexual harassment in this case. Despite its attempts to prevent sexually harassing behavior through promulgation of an anti-harassment policy, JWR was unaware of Ralph Williams' alleged conduct until informed of the alleged behavior through the complaints of Jan Tyner on March 13, 1997. Immediately after learning of the allegations, JWR management met with Williams and advised him of the allegations. Despite Williams' denial of the allegations, he was instructed to refrain from any contact with female employees and informed him that he would be suspended pending investigation of the complaints. Williams then advised JWR that he had planned to start a vacation the next day, which JWR allowed in lieu of the suspension. During Williams' absence from the mine site, JWR interviewed various witnesses, including all three plaintiffs in this case. On March 24, 1997, Williams returned to work and was assigned to a section of the mine where no female employees worked. The next day, Williams was suspended. On March 28, 1997, after obtaining signed affidavits from witnesses and the alleged victims, Williams was fired.

The Plaintiffs in this case also failed to reasonably take advantage of preventive and corrective opportunities available to them with respect to Ralph Williams' conduct. While Plaintiffs argue that they never saw or were furnished with a copy of JWR's policy on sexual harassment, the policy was posted in at least two places at all times relevant to the facts in this case.[5] Furthermore, Frieson, Snyder, and Blocker all admit that they considered informing management about Williams' sexual conduct, but decided not to for various reasons. Frieson testified that she frequently considered reporting Williams, but did not do so for fear that he would lose his job. Snyder testified that she considered reporting Williams, but decided against it when co-worker Bertha Edwards advised her that it would be better to go pray about it. Blocker also testified that she threatened to report Williams for the alleged harassment. In addition, all three plaintiffs were also aware of a collective bargaining agreement between the United Mine Workers of America ("UMWA") and JWR which prohibited discrimination and provided a grievance mechanism[6] for employees to resolve all employment disputes.

---

[5] *See supra* note 1. Even if a dispute exists as to whether the policy was actually posted, JWR is still entitled to summary judgment on Plaintiffs' hostile environment claims based upon Plaintiffs' failure to report Williams to management, despite their knowledge that they could do so.

[6] All three plaintiffs testified that they had successfully utilized the grievance procedure found in the collective bargaining agreement in the past.

4

Despite their knowledge that they could report Williams to management for his conduct and/or seek corrective action through the union grievance procedure, Frieson, Snyder, and Blocker did nothing to inform JWR that they were being subjected to Williams' sexual harassment. "When an employer has taken steps, such as promulgating a considered sexual harassment policy to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem." *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1366 (11th Cir. 1999). By choosing not to report Williams' alleged conduct, the Plaintiffs "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [JWR] or to avoid harm otherwise."[7] *Ellerth*, 118 S. Ct. at 2270. Plaintiffs' suggestion that Frieson's complaints to Dwight Cagle, Jerry McKinney, or Larry Bentley placed JWR on notice about the alleged sexual conduct is also misplaced. Frieson's complaints were vague and generally concerned problems that she was having getting along with Williams or with respect to the manner in which he was assigning, supervising, and/or critiquing her work. As the Eleventh Circuit has said, complaints about unspecified "problems" are insufficient to place the employer on notice of the alleged harassment. *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1251 n.24 (11th Cir. 1988)(plaintiff's comments to company president about "personal" problems with her supervisor were insufficient to alert her employer of the alleged sexual harassment).

Because JWR exercised reasonable care to prevent and correct promptly sexually harassing behavior, and because Plaintiffs unreasonably failed to take advantage of preventive or corrective opportunities, JWR is entitled to summary judgment on the hostile environment claims. *See Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 2270 (1998).

2.    Retaliation- Sexual Harassment

In Count II of their Second Amended Complaint, Plaintiffs have also raised various retaliation claims against JWR based upon the conduct of Ralph Williams. Specifically, Plaintiffs claim that Williams retaliated against them for rejecting his advances by calling them names, making them perform additional job duties, and threatening them. Additionally, Plaintiff Frieson alleges that she was retaliated against by co-workers, who called her names and/or harassed her after she reported Williams' conduct to JWR management. For a plaintiff to establish a prima facie case for retaliation, she must show: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*,

---

[7]The fact that Plaintiff Frieson alleges that Williams threatened her after she first reported to management that she was having problems with him is of little consequence. When Frieson made the initial complaints about Williams to Jerry McKinney and Larry Bentley she was given ample opportunity to provide management with actual knowledge of Williams' behavior. *See Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1251 n. 24 (11th Cir. 1998).

117 F.3d 1278 (11ᵗʰ Cir. 1997). Plaintiffs' retaliation claims fail because they cannot establish the first and second elements of their prima facie cases.

In the present case, Plaintiffs retaliation claims fail because they did not engage in protected activity until after the alleged retaliatory conduct occurred. Protected activity is engaged in when an individual opposes an unlawful employment practice or participates in an "investigation, proceeding, or hearing" to rectify any alleged unlawful practices. 42 U.S.C. Section 2000e-3(a). Generally, the opposition must be directed at an unlawful employment practice of the employer, not an act of [harassment] by a private individual. *Little v. United Technologies*, 103 F.3d 956, 959 (11ᵗʰ Cir. 1997). While it may be possible to state a retaliation claim based upon an individual's opposition to offensive conduct by a supervisor, such conduct "is protected conduct within the parameters of [Title VII] only if [the supervisor's] conduct can be attributed to [the employer]." *Id.* In this case, Plaintiffs did not engage in "protected activity" until March of 1997 when they informed JWR management about Ralph Williams' alleged sexual harassment.[8] Furthermore, Plaintiffs are precluded from asserting that they engaged in protected activity in opposing Ralph Williams' advances because the Eleventh Circuit has recognized that an individual's opposition to offensive conduct of a foreman such as Williams may not be attributed to an employer unless the plaintiff can show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See id.* Plaintiffs have offered no evidence that JWR knew or should have known about Williams' alleged sexual harassment.

Even assuming that Plaintiffs did engage in protected activity when they refused Williams' advances, their retaliation claims still fail because the alleged retaliatory conduct did not constitute adverse employment action. To prevail on a retaliation claim, the "retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment...." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11ᵗʰ Cir. 1998). Plaintiffs contend that when they rebuffed Williams' advances they were called "holy rollers" and were subjected to additional and/or more difficult work assignments. Nevertheless, retaliation claims based upon the "holy roller" comments must fail because such comments do not rise to the level of adverse employment action. Similarly, Plaintiffs' claims that Williams required them to perform additional job duties do not rise to the level of adverse employment action. *See, e.g., Reinhold*, 151 F.3d 172, 175 (4ᵗʰ Cir. 1998)(holding that a plaintiff's allegations that she was assigned extra work as a result of her rejection of sexual advances did not arise to the level of a "tangible employment action"); *Ellerth*, 118 S. Ct. at 2268 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

Plaintiff Frieson also alleges that she was retaliated against by co-workers who called her names, made harassing phone calls, and/or treated her differently following her disclosures of

---

[8]Plaintiffs also did not file EEOC claims until the following dates: Juanita Frieson- June 24, 1997; Gloria Snyder- June 24, 1997; Loretta Blocker- July 15, 1997.

Williams' conduct to JWR management. However, co-worker harassment does not constitute adverse employment action on the part of the employer unless the employer directed or condoned the alleged conduct. *See Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 868 n.11 (11th Cir. 1997), *opinion vacated on other grounds in* 118 S. Ct. 2364 (1998). Because there is no evidence in this case that JWR condoned, directed, or in any way had notice of this alleged retaliatory conduct, these claims must also fail.

### 3. Negligent Retention and Supervision

In Count IV of their Second Amended Complaint, Plaintiffs allege claims against JWR for negligent retention and supervision of Defendant Ralph Williams. To recover on a claim of negligent retention, a plaintiff must show that an employer failed to use due care to avoid the "retention of an employee whom [the employer] knows or should know is a person, unworthy, by habits, temperament, or nature to deal with the persons invited to the premises by the employer." *Patterson v. Augat Wiring Systems, Inc.*, 944 F. Supp. 1509, 1529 (M.D. Ala. 1996)(citing *Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 894 (Ala. 1973)). Similarly, to prevail on a negligent supervision claim, the plaintiff must offer "affirmative proof that [the employee]'s alleged incompetence was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Ledbetter v. United American Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993). In the present case, Williams' alleged sexual harassment was not made known to JWR until March of 1997. Immediately after JWR received notice of his alleged behavior, affirmative steps were taken to remedy the problem. As such, Plaintiffs' negligent retention and supervision claims fail.

### 4. Race Discrimination[9]

Plaintiff Blocker has also raised a claim of race discrimination based upon JWR's initial denial of her claim for workers' compensation benefits in connection with her diagnosis of carpal tunnel syndrome. In order to make a prima facie case for discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was subjected to adverse employment action; (3) that she was qualified for her position; and (4) that the employer treated similarly situated employees more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). Finally, to defeat a motion for summary judgment where the employer has articulated a legitimate, nondiscriminatory reason, the plaintiff must establish pretext by a

---

[9]Plaintiff Blocker has brought race discrimination claims under both Title VII and § 1981. JWR argues that Blocker's § 1981 claim is untimely because she did not join the lawsuit until over two years after her workers' compensation claim was denied. Additionally, JWR argues that Blocker's Title VII claims are untimely because Blocker did not file her EEOC charge alleging race discrimination until over 180 days after the denial of her workers' compensation claim. Plaintiff argues that her claims are timely when these time periods are calculated with respect to her corrective surgery. Because JWR is entitled to summary judgment on the merits, this Court did not decide this issue.

preponderance of the evidence, either "by means of affirmative evidence that race played an impermissible role in the decision or by showing that the proffered nondiscriminatory reasons do not merit credence." *Lincoln v. Board of Regents*, 697 F.2d 928, 938 (11ᵗʰ Cir. 1983). In the present case, Plaintiff Blocker's claim must fail because she cannot establish a prima facie case or show that JWR's legitimate, nondiscriminatory reason for denying her claim was pretextual.

Plaintiff Blocker cannot establish a prima facie case for race discrimination because she cannot show that she was subjected to adverse employment action. Blocker's claim fails in this regard because JWR ultimately offered to pay her claim, and she voluntarily refused to accept the workers' compensation payments. Furthermore, even assuming that Blocker could establish a prima facie case, her claim fails because she has not offered any real evidence that JWR's legitimate, non-discriminatory reasons are pretextual. JWR has asserted that it initially denied Blocker's benefits not because of her race, but because she failed to follow the mandated claims procedures. To receive benefits under these procedures, an injured employee must report the alleged work-related injuries to a supervisor, submit an accident report, and seek treatment from an approved JWR worker's compensation physician. Blocker followed none of these procedures in the present case. Blocker does offer "comparator" evidence that two white employees, Sparks and Odom, were granted worker's compensation benefits with respect to carpal tunnel syndrome. However, like Plaintiff Blocker, Odom's carpal tunnel syndrome claim was initially denied before it was granted. Unlike Plaintiff Blocker, Sparks followed the appropriate claims procedures before his claim was granted. Therefore, Blocker cannot produce any evidence to suggest that JWR's legitimate, non-discriminatory reason for initially denying her claim is pretextual.

5. Retaliation- Workers' Compensation

Plaintiff Blocker also alleges that JWR denied her workers' compensation claim in retaliation for an EEOC charge which she filed against a JWR employee in 1995 or 1996. However, because there is no evidence that JWR had any knowledge of this alleged claim against a co-worker until Blocker's August 12, 1998 deposition, retaliatory animus could not have motivated JWR's initial denial of her claim in 1995. Therefore, JWR is entitled to summary judgment on Blocker's retaliation claim.

6. Workers' Compensation and Bad Faith

JWR is also entitled to summary judgment on Plaintiff Blocker's workers' compensation and bad faith claims. Due to the exclusivity provision of the Workers' Compensation Act, Alabama courts have not recognized tort claims against a workers' compensation carrier alleging bad faith failure to pay an insurance claim. Furthermore, any possible claims for workers' compensation are either moot at this point or time barred by the two year statute of limitations period found in Ala. Code § 25-5-80.

8

Case 7:97-cv-03365-ELN   Document 34   Filed 09/27/99   Page 9 of 9

## Conclusion

For the foregoing reasons, Defendant Jim Walter Resources' Motion for Summary Judgment is due to be granted.

Dated: _Sept. 24_, 1999

Chief Judge Sam C. Pointer, Jr.

Service List:
Mr. Marvin L. Stewart, Jr.
Mr. Guy D. Chappell, III
Mr. James P. Alexander
Mr. Abdul K. Kallon
Mr. David R. Arendall

9